## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
-----------------------------------
                                   :
   DEBBIE A. BROWN,                :
                                   :
         Plaintiff,                :   CIVIL NO. 07-2649 (NLH)
                                   :
      v.                           :
                                   :        OPINION
   COMMISSIONER OF                 :
   SOCIAL SECURITY,                :
                                   :
         Defendant.                :
                                   :
-----------------------------------
```

**APPEARANCES:**

Adrienne Freya Jarvis, Esquire
800 Kings Highway North
Suite 304
Cherry Hill, NJ 08034

   *Attorney for Plaintiff*

Christopher J. Christie
United States Attorney
      By:  Sandra Grossfeld, Esquire
           Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

   *Attorney for Defendant*

**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of

the Social Security Administration, denying the application

of Plaintiff for Disability Insurance Benefits and

Supplemental Security Income ("Social Security benefits")

under Title II and Title XVI of the Social Security Act.  42

U.S.C. § 401, et seq.  The issue before the Court is whether

the Administrative Law Judge ("ALJ") erred in finding that

there was "substantial evidence" that Plaintiff was not

disabled at any time since her alleged onset date of

disability, August 26, 2003.[1]  For the reasons stated below,

this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Debbie A. Brown, had been employed in

various positions, including as a chicken de-boner, cashier,

and produce weigher, before August 26, 2003, at which time

Plaintiff claims that she could no longer work due to her

neck, shoulder, back and knee pain.[2]  Plaintiff applied for

Social Security benefits, and after a hearing before an ALJ,

---

[1]Plaintiff's original application alleged an onset date
of April 18, 2003.  She later amended her application to
August 26, 2003, the date she was involved in a car
accident.

[2]As discussed more fully below, Plaintiff's application
for disability benefits stated that her legs, back and neck
limited her ability to work.  (R. at 84.)  In this appeal,
Plaintiff has not only challenged the ALJ's finding that she
was not totally disabled because of these ailments, but she
also contends that he did not find her ailments of obesity,
right hand and right knee pain, headaches and chronic pain
to cause her to be disabled.

it was determined that Plaintiff was not disabled.
Plaintiff appealed the decision, and the Appeals Council
denied Plaintiff's request for review.  Plaintiff now seeks
this Court's review.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for
judicial review of the Commissioner's decision to deny a
complainant's application for Disability Insurance Benefits.
Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A
reviewing court must uphold the Commissioner's factual
decisions where they are supported by "substantial
evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v.
Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel,
228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970
F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means
more than "a mere scintilla." Richardson v. Perales, 402
U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V.
NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant
evidence as a reasonable mind might accept as adequate to
support a conclusion." Id.  The inquiry is not whether the
reviewing court would have made the same determination, but
whether the Commissioner's conclusion was reasonable.  See

Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful

4

court review:

> Unless the [Commissioner] has analyzed
> all evidence and has sufficiently
> explained the weight he has given to
> obviously probative exhibits, to say
> that his decision is supported by
> substantial evidence approaches an
> abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and

evaluate the medical evidence presented, Fargnoli, 247 F.3d

at 42, "[t]here is no requirement that the ALJ discuss in

its opinion every tidbit of evidence included in the

record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir.

2004).  In terms of judicial review, a district court is not

"empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."  Williams, 970

F.2d at 1182.  Moreover, apart from the substantial evidence

inquiry, a reviewing court is entitled to satisfy itself

that the Commissioner arrived at his decision by application

of the proper legal standards.  Sykes, 228 F.3d at 262;

Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in
     substantial gainful employment, he will be found
     "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P,
     Appendix 1 and has lasted or is expected to last
     for a continuous period of at least twelve months,
     the claimant will be found "disabled."

4.   If the claimant can still perform work he has done
     in the past ("past relevant work") despite the
     severe impairment, he will be found "not
     disabled."

5.   Finally, the Commissioner will consider the
     claimant's ability to perform work ("residual
     functional capacity"), age, education, and past
     work experience to determine whether or not he is
     capable of performing other work which exists in
     the national economy.  If he is incapable, he will
     be found "disabled."  If he is capable, he will be
     found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

    This five-step process involves a shifting burden of

proof.  See Wallace v. Secretary of Health & Human Servs.,

722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps

of the analysis, the burden is on the claimant to prove

every element of his claim by a preponderance of the

evidence.  See id.  In the final step, the Commissioner

bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.    Analysis

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff's arthritis of the back, neck and left knee, and a muscle injury to her right shoulder were all severe (Step Two). The ALJ then found that even though Plaintiff's impairments did not meet the medical equivalence criteria (Step Three), she was not capable of performing past relevant work (Step Four).  The ALJ found, however, that she had the residual functional capacity (RFC) to perform other jobs which are in significant numbers in the national economy (Step Five).

Plaintiff presents several arguments for review. Primarily, Plaintiff argues that the ALJ erred when he did not consider her obesity, right knee and right hand pain, chronic pain, or headaches.  Based on this alleged failure,

Plaintiff claims that the ALJ erred (1) by not concluding
that these impairments were severe at Step Two, (2) by not
considering how these impairments affected her RFC, (3) by
not presenting these impairments in the hypothetical
directed to the Vocational Expert (VE), (4) by not
considering all the medical evidence, and (5) by basing his
Step Five determination of a flawed analysis by the VE.
Plaintiff also alleges with regard to all her impairments
that the ALJ erred by considering two RFC determinations
that were made without a complete record, he failed to ask
the VE whether his opinions were consistent with the
Department of Occupational Titles (DOT), he did not use the
"grids" at Step Five, and he improperly evaluated her
credibility.

### 1. Whether the ALJ erred when he did not consider her obesity, right knee and right hand pain, chronic pain or headaches at Step Two

In making his disability determination, the ALJ
considered Plaintiff's impairments of arthritis of the back,
neck and left knee, and a muscle injury to her right
shoulder.  Plaintiff argues that the ALJ improperly
"rejected" the "severe impairments" of "obesity, right knee,
right hand, chronic pain, and headaches."  (Pl. Br. at 12.)
Because he rejected these impairments, Plaintiff essentially

argues that the remainder of the ALJ's analysis is flawed.

As a primary matter, there is no evidence that the ALJ affirmatively "rejected" certain ailments.  Even though Plaintiff's application for disability benefits lists her impairments as "legs and back, neck," she does not specifically list "obesity, right knee, right hand, chronic pain, and headaches" as debilitating.  (R. at 84.) Recognizing this, Plaintiff argues that the ALJ still had a duty to consider these impairments because they are documented in the medical records and there is no evidence contradicting these impairments.  (Pl. Br. at 12.)  In support of this arugment, Plaintiff cites to the Regulations, which provide, "We will consider only impairment(s) you say you have or about which we receive evidence."  20 C.F.R. § 404.1512.  Plaintiff argues that the phrase "or about which we receive evidence" places an affirmative duty on the ALJ to explain why he "rejected" impairments which are documented in the medical records. (Pl. Br. at 13.)

Plaintiff's argument is unavailing.  The burden is on Plaintiff to prove that she has a severe disability.  20 C.F.R. § 404.1512.  Thus, it is Plaintiff's duty to show to the ALJ how her obesity, right knee, right hand, chronic

pain, and headaches are debilitating.  Plaintiff failed to do so.

First, with regard to obesity, because she was 240-300 pounds at 5'5" tall, Plaintiff claims that the ALJ should have taken notice that Plaintiff was obese "per se" and should have evaluated how her obesity affected her RFC. Although an ALJ must use his own "judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity," "nothing in [the Regulations] compels a finding of obesity in the absence of an uncontroverted diagnosis by a physician who has examined the claimant." Wimberly v. Barnhart, 128 Fed. Appx. 861, 863 (3d Cir. 2005) (citing SSR 02-1p; Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999)).  Further, where a plaintiff does "not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk," the ALJ's reliance on the medical assessments "constitutes a satisfactory if indirect consideration of that condition." Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (citation omitted).

Here, Plaintiff's weight was noted in her medical

records of her treating physicians and the report of the
State consulting physician.  None of those physicians,
however, diagnosed her as obese or documented how
Plaintiff's weight affected her ability to work.
Additionally, Plaintiff herself did not claim or testify to
how her weight affected her ability to work.  Without
Plaintiff claiming obesity as an disabling impairment,
without her testimony as to how her weight affected her
ability to work, and without any medical records indicating
that Plaintiff's weight adversely affected her, the ALJ did
not err at Step Two by not specifically considering whether
Plaintiff's obesity was a severe impairment.

Second, with regard to her headaches and pain, those
conditions as claimed by Plaintiff are not separate
impairments for consideration at Step Two.  Rather, they are
subjective symptoms that must be considered in combination
with the medical findings to determine whether Plaintiff
retains the capacity to work.  20 C.F.R. § 404.1529(c);
Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433
(3d Cir. 1999).  Thus, the ALJ did not err at Step Two with
regard to Plaintiff's complaints of headaches and pain.

Third, with regard to her right knee and right hand
pain, there is no evidence that these ailments were

separate, independent impairments claimed by Plaintiff or diagnosed by her physicians.  Even though the medical evidence demonstrates that she had some difficulty with her right knee and right hand, "[t]he duty to evaluate a claimant's symptoms imposed by 20 C.F.R. § 404.1529(c) does not extend to guessing what the impact of those symptoms may be."  Wimberly, 128 Fed. Appx. at 863.  Accordingly, the ALJ did not err at Step Two with regard to these conditions.[3]

    **2.   Whether the ALJ erred at Step Five when he determined that Plaintiff retained the RFC to perform other jobs in the national economy**

The ALJ found that Plaintiff did not have the residual functional capacity to perform her past relevant work, but he found that Plaintiff did have the RFC to perform other jobs in the national economy.  Plaintiff argues that this finding is in error for numerous reasons.  She argues that the RFC determination did not take into account her

_____

[3]It is important to note that even though the ALJ did not specifically find these impairments as "severe" at Step Two, he considered these impairments when determining her RFC at Steps Four and Five.  Thus, even if the ALJ had considered these impairments as "severe" at Step Two, as discussed below, he did not find them to preclude her ability to perform other work in the national economy. Therefore, whether the ALJ erred at Step Two is of no practical importance when his decision rested on an RFC analysis that took into account all the impairments Plaintiff was suffering.

impairments of obesity, headaches, pain, and right knee and
hand pain, that it was not based on all the medical
evidence, and it was based on flawed findings by the
Vocational Expert.  Plaintiff also argues that the ALJ did
not properly assess her credibility.

Plaintiff's arguments are unpersuasive.  With regard to
her argument that the ALJ did not consider all of the
medical evidence, Plaintiff contends that the ALJ only
considered four of the twelve medical exhibits of
Plaintiff's treating physicians' records.[4]  Plaintiff claims
that because the ALJ did not specifically cite to certain
medical records, the ALJ improperly rejected the contents of
those medical records without explanation.  This argument is
unsupportable.  Even though the ALJ may not have
specifically cited to every medical record does not mean
that the ALJ did not consider the evidence.  Hur v.
Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004) ("There is
no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record.").

―――――――――――――

[4]Two of the medical records Plaintiff claims the ALJ
overlooked are duplicate records.  Additionally, several of
the records pertain to the years 2000 to 2001, which are
prior to Plaintiff's alleged disability onset date of August
2003, and one of the records concerns a CT scan of
Plaintiff's brain, which showed a normal result, and which
was referenced in the ALJ's decision.

Furthermore, the ALJ's determination of Plaintiff's RFC was supported by substantial evidence, which negates Plaintiff's argument that it was improper.  First, the only examining physician who submitted a medical assessment of Plaintiff's ability to perform work-related functions was Jack DiMarco, M.D., a State consultative orthopedic examiner.  None of Plaintiff's treating physicians completed a medical assessment of Plaintiff's functional abilities during the relevant period.[5]

As noted by the ALJ in his decision, Dr. DiMarco found that Plaintiff was "well developed and in no acute

---

[5] On March 29, 2005, the ALJ sent Plaintiff to Dr. DiMarco for a consultative examination (CE).  This was the second RFC assessment performed on Plaintiff.  The first RFC assessment was made on March 12, 2004 by a State agency non-examining physician, who reviewed the medical records and clinical findings of Plaintiff's treating physician, Frank Brigio, M.D.  (R. at 213-220.)  The first RFC assessment found that Plaintiff was able to lift 20 pounds occasionally, lift 10 pounds frequently, stand and/or walk 3-4 hours in an 8-hour work day, sit for 6 hours, and have an unlimited capacity to push and/or pull.  The RFC assessment found that Plaintiff could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but she could never balance.  The RFC also found that she could occasionally reach, handle, finger, and feel due to limited pinch and grip strength.  Plaintiff takes issue with this assessment because it appears to have been corrected, and it is unclear who performed this assessment.  The propriety of the first RFC is immaterial, however, because (1) the second RFC assessment performed by Dr. DiMarco revealed a more restrictive RFC, and (2) the ALJ relied upon Dr. DiMarco's RFC and not the first RFC.

distress." (R. at 22.) He found that her range of motion
of the neck was within normal range, and the examination of
her shoulders revealed no swelling or pain upon resistence.
(Id.) Dr. DiMarco found that Plaintiff's knees "revealed
crepitus[6] with the right being worse than the left," but he
did not find any "swelling[,] effusion or warmth." (Id.)
The straight leg test was positive at 45 degrees, but no
tenderness upon palpitation was appreciated in the cervical
or lumbar area. (Id.) Dr. DiMarco found that Plaintiff had
osteoarthritis affecting her knees and lumbar spine, and
that she may have degenerative disc disease versus mild
lumbar degenerative joint disease. (Id.)

    In completing a medical "Statement of Ability to
Perform Work-Related Activities," Dr. DiMarco indicated that
Plaintiff would be able to frequently lift and/or carry
weight up to ten pounds, stand and/or walk for at least two
hours in a typical eight hour day, and sit for about six
hours with the need to alternate positions. (Id.) Dr.
DiMarco noted Plaintiff's inability to climb, balance, and
crawl, but she could kneel, crouch, and stoop occasionally.
(Id.) He limited Plaintiff's ability to reach with the

_____

    [6]Crepitus is "the grating of a joint, often in
association with osteoarthritis." Stedman's Medical
Dictionary, 27th ed.

upper right extremity to occasionally.  (Id.)

Based on Dr. DiMarco's examination and report, the ALJ found that because Plaintiff could sit for at least six hours, although requiring the ability to alternate positions, stand/walk for two hours, and lift/carry about ten pounds frequently, Plaintiff was capable of sedentary work.[7]  (Id.)  The ALJ noted, however, that Plaintiff was restricted from reaching with her right upper extremity, kneeling, crouching or stopping more than occasionally, and she could never climb, balance or crawl.  (R. at 23.)

Plaintiff argues that the ALJ's reliance on Dr. DiMarco's report was in error because Dr. DiMarco did not consider all of her medical evidence.  Plaintiff argues that if Dr. DiMarco knew of her entire medical history, he would have made a different conclusion.  Plaintiff also contends that Dr. DiMarco did not properly credit her subjective complaints.  These arguments are untenable.

Dr. DiMarco performed an independent physical

---

[7]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567

examination of Plaintiff.  Even taking as true Plaintiff's
contention that Dr. DiMarco did not know of the medical
history of Plaintiff's knees or that she had tears in her
right shoulder and left knee, Dr. DiMarco independently
assessed Plaintiff's physical condition and found that she
was able to perform certain tasks and not others.  Whether
another doctor indicated that Plaintiff had, for example, a
tear in her shoulder,[8] does not preclude Dr. DiMarco from
making his own assessment of her abilities.

        Correspondingly, even if, as Plaintiff claims, Dr.
DiMarco "did not credit" Plaintiff's "recitation of her
medical conditions and diagnoses,"[9] Dr. DiMarco performed his
own evaluation of her condition and made findings consistent
with his evaluation.  Whether Dr. DiMarco, in his capacity as
a physician performing an examination of Plaintiff, did or

_____

        [8]The Court notes that the MRI evidencing the tear in
Plaintiff's knee was performed in July 2001, which is two
years prior to her alleged disability onset date.  (R. at
263.)   The MRI which showed a "rupture of the long head of
the biceps tendon avulsed from the glenoid labrum" was
performed in December 2003.  (R. at 208.)  Dr. DiMarco
assessed Plaintiff's condition in March 2005.

        [9]It is unclear why Plaintiff argues that Dr. DiMarco
did not "credit" her recistation of her medical history.  In
his report, Dr. DiMarco recounted in detail what Plaintiff
told him about her medical and employment history, and Dr.
DiMarco does not make any comments that he disbelieved
Plaintiff.  (R. at 235.)

did not believe Plaintiff's statements to him is only
relevant to the extent that other evidence in the record
contradicts Dr. DiMarco's findings.  If the ALJ had found
that Dr. DiMarco improperly "did not credit" what Plaintiff
told him, it was the ALJ's duty to determine what weight to
give Dr. DiMarco's report.

The ALJ properly assessed Dr. DiMarco's report, however,
because Dr. DiMarco's findings of Plaintiff's abilities and
inabilities were not contradicted by any of Plaintiff's
examining doctors.  It is Plaintiff's burden to demonstrate
that she is disabled, and the ALJ is required to base his
decision on the evidence in the record.  Plaintiff did not
provide the ALJ with any contrary assessment.  Accordingly,
not only was Dr. DiMarco's assessment proper, the ALJ
properly relied upon Dr. DiMarco's findings.

Corollary to the ALJ's finding that Plaintiff was
capable of performing sedentary work, is the ALJ's reliance
on the Vocational Expert's testimony in determining that
Plaintiff was not capable of performing her past relevant
work, but that she was capable of performing other jobs
available in the national economy.  Plaintiff argues that the
ALJ's hypothetical to the VE was incomplete, the jobs the VE
stated that Plaintiff was capable of were not supported by

her RFC, and he failed to ask the VE whether his opinions were consistent with the Department of Occupational Titles (DOT).  All arguments are unavailing.[10]

The Plaintiff first argues that the hypothetical posed to the VE did not include her obesity, headaches, pain, and right knee and hand pain.  As a primary matter, although the hypotheticals posed to vocational experts by an ALJ during the RFC analysis "must reflect all of a claimant's impairments that are supported by the record," Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987), a condition that does not result in any functional impairment is not relevant to the RFC analysis, Wimberly, 128 Fed. Appx. at 863; see also Burns v. Barnhart, 312 F.2d 113, 123 (3d Cir. 1987) (citation omitted) (stating that even though a hypothetical must include all of a Plaintiff's impairments, those impairments must be based on "medically undisputed evidence of specific impairments").  As discussed above in the analysis of the ALJ's Step Two findings, plaintiff's weight was noted by her doctors and Dr. DiMarco, but neither the doctors, nor Plaintiff attributed her alleged disability to

_____

[10]It is important to note that Plaintiff does not challenge the VE's finding that Plaintiff was incapable of performing her past relevant work.  That finding was made on the same hypothetical and RFC as the VE's finding that Plaintiff was capable of performing other sedentary jobs.

her weight.  See Rutherford v. Schweiker, 399 F.3d 546, 552-
53 (3d Cir. 2005) (holding that remand was not warranted
where the ALJ did not specifically consider the plaintiff's
obesity because the plaintiff's doctors noted her obesity,
and because the plaintiff did not claim how her obesity would
factor into the five-step analysis).  Thus, not specifically
including weight as part of the hypothetical was not in
error.

     With regard to her right hand and knee pain, these
complaints were considered by Dr. DiMarco in his examination
of Plaintiff and were part of his findings,[11] upon which he
based his assessment of her abilities and inabilities.  From
that assessment, the ALJ determined Plaintiff's RFC.  The ALJ
asked the VE "to consider a hypothetical individual of the
claimant's age, education and work background, who retains
the residual functional capacity" as the ALJ described it.
(R. at 23.)  Thus, the hypothetical posed to the VE took into

_____

     [11]Dr. DiMarco found that Plaintiff "has good strength at
the right wrist," "good right hand intrinsic muscle
strength," and the right grip strength is only slightly
decreased compared to the left.  (R. at 237.)  Dr. DiMarco
also found that the crepitus on the right knee was worse
than the left, but that there was no evidence of any knee
effusion or warmth to palpation.  (Id.)  Dr. DiMarco also
noted that "she ambulates independently without a hand held
assistive device and does not have an antalgic gait."  (Id.)

consideration her right hand and knee concerns.

With regard to her complaints of pain and headaches, as discussed more fully below with regard to the ALJ's assessment of her credibility, the ALJ did not find Plaintiff's subjective complaints, including her pain and headaches, to preclude the performance of sedentary work. Because these complaints were considered in the ALJ's formulation of Plaintiff's RFC, and the ALJ asked the VE to consider the hypothetical claimant who had the same RFC as Plaintiff, the ALJ did not err in his hypothetical.

Next, Plaintiff argues that the jobs the VE stated that Plaintiff was capable of were not supported by her RFC. The VE found that Plaintiff would be capable of being a call-out operator and a surveillance system monitor. When asked in a subsequent interrogatory following the hearing whether "the finding that the claimant must alternate sitting/standing affect her ability to perform" those jobs, the VE stated, "Although this is a sedentary position, it is my opinion that performance of the essential job duties would not be [a]ffected to erode pace, productivity and concentration necessary to complete tasks even if a person alternated sitting and standing." (R. at 140.) Plaintiff argues that those jobs are very demanding mentally, and require a high

alertness and attention to detail, and that the VE's conclusion that pace, productivity and concentration would not be affected if a person needed to alternate between sitting and standing was an unsupported conclusion. (Pl. Br. at 23.) Plaintiff's argument is curious, because there is no evidence, and Plaintiff has not claimed, that she is impaired with regard to the mental tasks of "pace, productivity and concentration." The relevant part of the VE's answer to the interrogatory is that Plaintiff can still perform the duties of a call-out operator and a surveillance system monitor even if she has to alternate between standing and sitting. Thus, Plaintiff has not shown how her RFC would preclude her from performing these jobs.

Plaintiff finally argues that the ALJ failed to ask the VE whether his opinions were consistent with the Department of Occupational Titles (DOT). Contrary to Plaintiff's argument, the VE testified to, and indicated in his answers to interrogatories, that his opinions were consistent with the DOT. (R. at 134, 136, 141, 326.)

Also in connection with the ALJ's determination of Plaintiff's RFC is Plaintiff's argument that the ALJ improperly assessed her credibility. The ALJ stated,

Having considered the claimant's testimony in

23

accordance with SSR-96-7p, and having given due
consideration to such matters as the claimant's
description of [her] symptomatology, treatment,
functional limitations, and daily activities, the
ALJ concludes that, while the claimant may
experience some subjective symptoms, they are not
of such severity, frequency, or duration as to
preclude the performance of sedentary work.
Clinical findings and objective diagnostic studies
did not support the claimant's testimony.

(R. at 23.)

Plaintiff argues that "had the ALJ properly evaluated
[Plaintiff's] credibility based upon facts that were not in
error, the consistency between her testimony and the medical
evidence would have been apparent."  (Pl. Br. at 28.)   The
Court construes this argument to assert that if the ALJ had
not made all the errors Plaintiff claims he made, he would
have believed her testimony.   This argument is untenable for
three reasons.

First, it has already been determined that the ALJ did
not make any errors that Plaintiff claims.   Second, simply
disagreeing with the ALJ's assessment is not sufficient to
establish that his decision was not supported by substantial
evidence.   Perkins v. Barnhart, 79 Fed. Appx. 512, 515 (3d
Cir. 2003).

Third, the ALJ's finding was in compliance with SSR 96-
7p, which provides, "No symptom or combination of symptoms

can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."   Additionally, an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony.  Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); SSR 96-7p.  Plaintiff has not demonstrated how the medical records, even the ones she claims the ALJ erred in considering, warrant a different conclusion as to her credibility.

Plaintiff's final argument as to how the ALJ erred is that he did not use the Medical Vocational Guidelines, called the "grids," at Step Five.  This argument is unsupportable, because the ALJ referenced and cited to the grids through out his decision.  (R. at 22-23, 24.)

Consequently, the ALJ did not err at Step Five when he determined that Plaintiff retained the RFC to perform other jobs in the national economy.

## III. Conclusion

For the reasons expressed above, the ALJ's determination

that Plaintiff was not totally disabled is supported by substantial evidence.  Accordingly, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: <u>May 19, 2008</u>                     <u>  s/ Noel L. Hillman    </u>

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

26